## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TALLY MARIE NEWMAN, | ) | Case No. 3:20–cv–00831–JRK |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | MAGISTRATE JUDGE |
| Acting Commissioner of Social Security, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

## I.    Introduction

Tally Marie Newman, Plaintiff, seeks judicial review of the final decision of Kilolo Kijakazi, the Acting Commissioner of Social Security (the "Commissioner"). The Commissioner denied Newman's application for supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act. This matter is before me under 42 U.S.C. § 405(g) and Local Rule 72.2(b). Because the ALJ followed proper procedures and her findings are supported by substantial evidence, I recommend that the Commissioner's final decision be AFFIRMED.

## II.   Procedural History

Newman applied for disability insurance benefits and supplemental security income on March 6, 2017. (ECF No. 15, PageID #: 93). She alleged a period of disability beginning on December 31, 2010, for both claims. (ECF No. 15, PageID #: 93). The Ohio Division of Disability

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kijakazi is substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Determination (the "State Agency") initially denied Newman's claim on June 8, 2017. (ECF No. 15, PageID #: 93). The State Agency denied it again on November 20, 2017, during reconsideration. (ECF No. 15, PageID #: 93). Ten days later, Newman requested a hearing before an ALJ. (ECF No. 15, PageID #: 93). ALJ Patricia Carey presided over Newman's hearing on November 29, 2018. (ECF No. 15, PageID #: 93). Newman appeared through counsel and testified. (ECF No. 15, PageID #: 115–32). James Lozer testified as an impartial vocational expert. (ECF No. 15, PageID #: 132–44).

The ALJ issued her decision on February 21, 2019. (ECF No. 15, PageID #: 93–104). She determined that Newman was not disabled under the Social Security Act. (ECF No. 15, PageID #: 93–104). Thereafter, Newman asked the Appeals Council to review and set aside the ALJ's ruling. The Appeals Council denied Newman's request on February 24, 2020. (ECF No. 15, PageID #: 79–81). This timely appeal followed. (ECF No. 1). Newman filed her brief in support on November 25, 2020. (ECF No. 16). The Commissioner responded on February 10, 2021. (ECF No. 19). Newman replied on February 24, 2021. (ECF No. 20).

## III.    Relevant Background

The ALJ's summaries of the testimony, medical evidence, and opinion evidence provide useful background for this report and recommendation. The Court adds to the ALJ's summaries below as necessary to address the parties' arguments.

### A.    Testimony

The ALJ summarized Newman's testimony:

> The claimant testified as follows: She does not have custody of two [of] her children. She could not take care of all the children at once. One lives with the father and the other lives with her mother. She has custody of her one-year-old child. She lives in an apartment. She has trouble going up and down the stairs. She is having surgery on her knee. Her sister moved in with her in September. She can read

> and write. She can handle a checking account. She was in the
> hospital in August of 2017 due to suicidal behavior. She has pain in
> the middle of her back to her tailbone. Laying down with ice or heat
> helps. Her mental health problems cause her not to leave her house
> for extended periods of time. She will not change her clothes for
> multiple days in a row. She isolates herself from people and will not
> do household chores. She can lift 25 pounds. Her daughter weighs a
> little over 25 pounds; she can lift her, but cannot carry her for very
> long (Hearing Testimony).

(ECF No. 15, PageID #: 98–99).

The ALJ sought Lozer's vocational expert testimony. The ALJ asked Lozer to first opine

on a hypothetical individual of Newman's age, education, and relevant vocational background

> who can do light work except she can occasionally climb ramps and
> stairs, never climb ladders, ropes or scaffolds[,] and can
> occasionally balance, stoop, kneel, [and] crouch but never crawl.
> She is to use no foot controls with the right lower extremity. She can
> never work around hazards[,] such as unprotected heights or moving
> dangerous mechanical parts. She can occasionally work in
> conditions of humidity and wetness and in conditions of extreme
> cold. She is also limited to performing simple, routine[,] and
> repetitive tasks but not at production rate pace. For example[:] no
> assembly line work. She is limited to no tandem work. She is limited
> to making simple work-related decisions. She is limited to
> responding appropriately to occasional interaction with supervisors[
> and] coworkers[,] and is to have no contact with the general public.
> She is limited to tolerating few changes in the work setting[,]
> defined as routine job duties that remain static and are performed in
> a stable, predictable work setting. Any necessary changes need to
> occur infrequently and be adequately and easily explained.

(ECF No. 15, PageID #: 137–38). Lozer testified that there was work in sufficient numbers in the

national economy for a hypothetical individual with those limitations. (ECF No. 15, PageID #:

138). He testified that there were three representative occupations—custodian, office clerk, and

laborers—that the hypothetical individual could perform, and he testified that his testimony was

consistent with the DOT and, where not contemplated by the DOT, his education and experience.

(ECF No. 15, PageID #: 1).

The ALJ then sought testimony about a second hypothetical. In it, the hypothetical individual had all of the same limitations as discussed above but, now, with a "sit/stand option … to change positions for two minutes while remaining on task 90 percent of the time." (ECF No. 15, PageID #: 139–40). Lozer testified that the hypothetical individual could not do any work at the light exertional level. (ECF No. 15, PageID #: 140). For a third hypothetical, the ALJ asked Lozer to consider an individual with the limitations discussed above—including the sit/stand option—but now at the sedentary exertional level. (ECF No. 15, PageID #: 140). Lozer testified that there were no jobs for such an individual. (ECF No. 15, PageID #: 141). Finally, the ALJ asked Lozer a fourth hypothetical, in which the individual was limited as above at the sedentary level but without a sit/stand option. (ECF No. 15, PageID #: 141). Lozer testified that there were sufficient jobs in the national economy that the hypothetical individual could perform. (ECF No. 15, PageID #: 141).

### B.    Medical Evidence

The ALJ first discussed the medical evidence concerning Newman's physical impairments:

> In evaluating the claimant's back pain, the undersigned notes that her gait was unassisted and normal (Exhibit 3F at 10, 13). She had 5/5 strength in the lower extremities (Exhibit 3F at 10, 13). Straight leg raising was borderline positive on the right and negative on the left (Exhibit 3F at 10). Her sensation to light touch was normal (Exhibit 7F at 4, 10). She had painful extension in the lumbar spine (Exhibit 7F at 4). She had full range of motion of the extremities (Exhibit 7F at 7). Her cranial nerves were intact (Exhibit 8F at 4). Her reflexes were intact (Exhibit 14F at 10). X-ray imaging revealed mild disc space narrowing at L4-L5 with mild to moderate narrowing at L5-S1 (Exhibit 3F at 15). There were mild degenerative changes of the set joints at L5-S1 bilaterally (Exhibit 3F at 15). Magnetic resonance imaging revealed mild loss of disc height, mild annular disc bulging, minimal facet disease, subtle thecal sac effacement, and mild bilateral inferior foraminal encroachment (Exhibit 14F at 2). At the lumbosacral junction, there was narrowing of the disc space, mild annular disc bulging with a small focal central protrusion, and minor facet disease (Exhibit 14F

4

at 2).

> Turning to the claimant's knee pain, the undersigned notes that she had no joint swelling, erythema, or effusion (Exhibit 3F at 10). She had 5/5 strength in her extremities (Exhibit 3F at 10, 13; Exhibit 7F at 4, 7). Her gait was unassisted and normal (Exhibit 3F at 10, 13). She had full range of motion of the extremities (Exhibit 7F at 7, 10; Exhibit 14F at 3). On occasion, she was noted to have an antalgic gait (Exhibit 14F at 6). However, she had full range of motion of the knee (Exhibit 14F at 6). There was no instability (Exhibit 14F at 6). Imaging revealed degenerative changes in the medial compartment (Exhibit 14F at 7).

> At points during the relevant period, the claimant's body mass index (BMI) was 42.82 (Exhibit 7F at 7), which is categorized as Level III 'extreme' obesity…

(ECF No. 15, PageID #: 99).

The ALJ then discussed Newman's history of mental-health symptoms:

> The undersigned notes that the claimant attempted suicide and required inpatient treatment in February of 2017 (Exhibit 3F at 4)… Examinations reflect that her affect was appropriate (Exhibit 3F at 6, 10; Exhibit 4F at 9, 12). Her speech and thought processes were well organized (Exhibit 3F at 6, 10; Exhibit 10F at 5; Exhibit 14F at 23). She had appropriate insight (Exhibit 3F at 6; Exhibit 10F at 5; Exhibit 14F at 32). Her judgment was intact (Exhibit 3F at 6; Exhibit 10F at 5; Exhibit 14F at 32). However, on occasion, she was noted to have fair to poor insight and judgment (Exhibit 5F at 12). Her memory was normal/intact (Exhibit 4F at 9, 12; Exhibit 7F at 4, 7; Exhibit 11F at 4). On occasion, her memory was described as variable (Exhibit 13F at 9). Her thoughts were goal-directed and logical (Exhibit 5F at 12). She was alert and oriented (Exhibit 5F at 12; Exhibit 7F at 7). She was adequately/well groomed (Exhibit 5F at 12; Exhibit 10F at 5). She made good eye contact (Exhibit 10F at 5; Exhibit 14F at 32). Her associations were relevant (Exhibit 12F at 9; Exhibit 13F at 6). Her attention span and concentration were good to fair/intact (Exhibit 12F at 9; Exhibit 13F at 6, 9; Exhibit 15F at 10; Exhibit 16F at 14). On occasion, she was noted to have poor attention span and concentration (Exhibit 13F at 4). She was cooperative (Exhibit 12F at 23, 31, 33; Exhibit 15F at 10; Exhibit 15F at 33). On occasion, she was described as irritable with agitated behavior and thoughts (Exhibit 15F at 16).

(ECF No. 15, PageID #: 100).

### C.    Opinion Evidence

The State Agency medical consultants opined on Newman's impairments and ability to work. They opined that Newman's degenerative back impairment was a severe impairment. (*E.g.* ECF No. 15, PageID #: 152). They opined that Newman could perform work at the light exertional level, with modifications: lift up to 20 pounds occasionally; lift up to 10 pounds frequently; stand and/or walk for 6 out of 8 hours in a work day; push and pull without additional limitations, occasionally climb ladders, ropes, or scaffolds; and occasionally kneel. (*E.g.* ECF No. 15, PageID #: 154–55). In support of those findings, they noted that Newman had "degenerative changes and disc space narrowing… [that] is slightly progressed at the L5-S1 level." (*E.g.* ECF No. 15, PageID #: 155).

The State Agency psychological consultants opined on Newman's mental status and impairments. They opined that Newman's depressive, bipolar, and related disorder was a severe impairment. (*E.g.* ECF No. 15, PageID #: 152). They opined that Newman had the following "paragraph B" limitations: moderately limited in understanding, remembering, and applying information; moderately limited in interacting with others; moderately limited in concentrating, persisting, and maintaining pace; and moderately limited in adapting and managing herself. (*E.g.* ECF No. 15, PageID #: 153).

## IV.    The ALJ's Decision

As is relevant here, the ALJ issued the following findings of fact and narrative analysis:

> 3.     The claimant has the following severe impairments: depression, anxiety, bipolar disorder, mild degenerative disc disease of the lumbar spine with radiculopathy, obesity, and osteoarthritis of the right knee…
>
> 4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, never climb ladders[,] ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch, but never crawl. She is to use no foot controls with the right lower extremity. She can never work around hazards, such as unprotected heights or moving dangerous mechanical parts. She can occasionally work in conditions of humidity and wetness, and in conditions of extreme cold. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. She is limited to no tandem work. She is limited to making simple work-related decisions. She is limited to responding appropriately to occasional interaction with supervisors, coworkers, and is to have no contact with the general public. She is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained…

6. The claimant has no past relevant work…

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2010, through the date of this decision…

(ECF No. 15, PageID #: 96, 98, 102, 104).

## V. Law and Analysis

### A. Standard of Review

The Court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a

conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "It is well established that the party seeking remand bears the burden of showing that a remand is proper…" *Oliver v. Sec'y of Health and Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Under this standard of review, a court cannot decide the facts anew, make credibility determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference…"). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Thus, the movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too. *See Greene ex rel. Greene v. Astrue*, No. 1:10-cv-414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion.").

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards, *i.e.*, "fails to follow its own regulations," unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is not harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[2] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20

---

[2] *E.g. Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

## B. Issues Presented

Newman raises three issues:

> 1. The ALJ erroneously failed to properly evaluate the totality of the evidence in the record.
>
> 2. The ALJ erred in her determination regarding credibility as it was not supported by substantial evidence and violated Social Security Ruling 16–3p.
>
> 3. The ALJ committed harmful error when she did not meet her burden at Step Five of the Sequential Evaluation.

(ECF No. 16, PageID #: 847).

## C. Issue I

In her first issue, Newman broadly argues that the ALJ improperly evaluated the "totality of the evidence in the record." (ECF No. 16, PageID #: 847, 855). Within that expansive single issue, Newman raises four discrete sub-issues. The Court addresses each below.

### 1. The ALJ Properly Analyzed Newman's Claim Under Listings 1.02, 1.04, 12.04, and 12.06

#### a. The ALJ Did Not Err Regarding Listing 1.02

Newman argues that the ALJ erred by finding her not to be disabled under Listing 1.02, which concerns the major dysfunction of a joint.[3] (ECF No. 16, PageID #: 856–57). Satisfying a

---

[3] The Social Security Administration overhauled its musculoskeletal-disorders listings on December 3, 2020. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78,164–89 (Dec. 3, 2020). The "rules are effective April 2, 2021" (*Id.* at 78,164) and they do not apply retroactively except to remanded cases. *Id.* (n. 2). Newman filed her Titles II and XVI claims on March 6, 2017; thus, Listing 1.02 applies to her claim.

Listing at Step Three results in an automatic determination of disability. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Thus, "the evidentiary standards for the presumptive disability under these Listings are more strenuous than for claims that proceed through all five steps of the sequential analysis." *Harvey v. Comm'r of Soc. Sec.*, No. 16–CV–3266, 2017 WL 4216585, *5 (6th Cir. Mar. 6, 2017) (citing 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); and *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014)). The Sixth Circuit "does not require a heightened articulation standard from the ALJ at Step Three of the sequential evaluation process." *Grohoske v. Comm'r of Soc. Sec.*, No. 3:11–CV–410, 2012 WL 2931400, *3 (N.D. Ohio July 18, 2012). But the ALJ must "actually evaluate the evidence," compare it to the requirements of the relevant Listing, and provide an "explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

Newman's argument concerns only her knee issues. As it pertains to lower-extremity dysfunctionality, Listing 1.02 provides:

> 1.02. Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s).
>
> With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b…

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02 (2017). "[I]nability to ambulate effectively" is defined as "an extreme limitation of the ability to walk." *Id.* § 1.00(B)(2)(b)(1). An

11

individual cannot ambulate effectively if, for example, he is unable to walk "without the use of a walker, two crutches[,] or two canes"; or "carry out routine ambulatory activities, such as shopping and banking." *Id.* § 1.00(B)(2)(b)(2).

The ALJ stated that she gave "[p]articular attention … to Listing 1.02," but that "the specified criteria required of the listing were not demonstrated by the available medical evidence." (ECF No. 15, PageID #: 96). The ALJ set forth the requirements of the listing, then noted that "the evidence does not demonstrate that the claimant has … the degree of difficulty in ambulating as defined in 1.00(B)(2)(b)." The ALJ elaborated later in the decision, stating that Newman

> had no joint swelling, erythema, or effusion (Exhibit 3F at 10). She had 5/5 strength in her extremities (Exhibit 3F at 10, 13; Exhibit 7F at 4, 7). Her gait was unassisted and normal (Exhibit 3F at 10, 13). She had full range of motion of the extremities (Exhibit 7F at 7, 10; Exhibit 14F at 3). On occasion, she was noted to have an antalgic gait (Exhibit 14F at 6). However, she had full range of motion of the knee (Exhibit 14F at 6). There was no instability (Exhibit 14F at 6). Imaging revealed degenerative changes in the medial compartment (Exhibit 14F at 7).

(ECF No. 15, PageID #: 99).

Read as a whole, the ALJ's decision properly explains why Newman did not meet Listing 1.02. The ALJ directly addressed the inability-to-ambulate-effectively standard, noting that Newman's "gait was unassisted and normal" much of the time. (ECF No. 15, PageID #: 99). And the ALJ correctly noted that even when she was described as having an antalgic gait, Newman "had full range of motion of the knee," another element of the Listing 1.02 analysis. (ECF No. 15, PageID #: 99). This evidence is substantial evidence because a reasonable person might accept it as adequate support for the ALJ's finding. *Rogers*, 486 F.3d at 241. And the ALJ created a logical bridge between the evidence and that finding. *Fleischer*, 774 F. Supp. 2d at 877.

Rather than argue that the ALJ mischaracterized or misstated this evidence, Newman

argues that because she had surgery on "both [of] her knees"[4] and the "objective evidence [demonstrated] that [she] had difficulty with at least one knee," the ALJ's "finding was not supported by substantial evidence." (ECF No. 15, PageID #: 856–57). But a claimant must do more than show that substantial evidence could support an alternative conclusion; she must show that the ALJ's finding either lacks substantial evidence or fails to create a logical bridge between the cited evidence and the finding. *Greene ex rel. Greene*, 2010 WL 5021033, at *4. Newman has not done so. Moreover, the evidence that she cites does not demonstrate that she was unable to ambulate effectively, which is required under Listing 1.02. Accordingly, the ALJ's finding that Newman does not meet Listing 1.02 should not be disturbed.

### b. The ALJ Did Not Err Regarding Listing 1.04

Newman argues that the ALJ erred by finding her not to be disabled under Listing 1.04, which concerns spinal disorders.[5] (ECF No. 16, PageID #: 856–57). Specifically, Listing 1.04 contemplates "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and] vertebral fracture [that] result[] in compromise of a nerve root (including the cauda equina) or the spinal code." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04 (2017). It contains three subsections: A, B, and C. "Listing 1.04A refers

---

[4] The parties disagree on this point. The Commissioner asserts that Newman's "argument that she had surgery on 'both her knees' is factually inaccurate," pointing to a potential error in the surgical note that speaks to a left-leg procedure. (ECF No. 19, PageID #: 886). In her reply, Newman states that "[a]ssuming arguendo that the surgical note was in error, that does not diminish the fact that Plaintiff had surgeries on her [right] knee [that] resulted in her walking with an antalgic gait (Tr. 759) and complaining of acute pain (Tr. 760)." (ECF No. 20, PageID #: 899). For the reasons discussed above, though, this disagreement is a collateral matter, as substantial evidence supports the ALJ's finding concerning Newman's general ability to ambulate without assistance.

[5] The Social Security Administration's musculoskeletal-disorders listings overhaul included Listing 1.04. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78,164–89 (Dec. 3, 2020). As with Listing 1.02, Listing 1.04 still applies to Newman's claim.

to evidence of nerve root compression characterized by specific clinical findings; Listing 1.04 B

refers to spinal arachnoiditis, confirmed by an operative note or tissue biopsy, and Listing 1.04C

refers to lumbar spinal stenosis that results in certain findings on diagnostic imaging techniques

and certain specified physical limitations." *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, No.

05–6536, 2006 WL 2430991, *7 (6th Cir. Aug. 22, 2006).

The ALJ directly considered Listing 1.04. She stated that

> Listing 1.04 requires the compression of a nerve root. There is no
> evidence in the medical record that claimant has a compromised
> nerve root. Additionally, there is no evidence of motor loss, muscle
> weakness, sensory loss, or reflex loss. Further, there is no evidence
> of spinal arachnoiditis or lumbar spinal stenosis resulting in
> pseudoclaudication. Moreover, there is no evidence that the
> claimant's back disorder has resulted in an inability to ambulate
> effectively, as defined by 1.00(B)(2)(b), which requires the use of
> an assistive device that limits the functioning of both upper
> extremities.

(ECF No. 15, PageID #: 96). The ALJ elaborated on those findings when narrating her RFC

finding, including citations to the record that support her Listing 1.04 finding. (ECF No. 15,

PageID #: 99). She stated that

> [Newman's] gait was unassisted and normal (Exhibit 3F at 10, 13).
> She had 5/5 strength in the lower extremities (Exhibit 3F at 10, 13).
> Straight leg raising was borderline positive on the right and negative
> on the left (Exhibit 3F at 10). Her sensation to light touch was
> normal (Exhibit 7F at 4, 10). She had painful extension in the lumbar
> spine (Exhibit 7F at 4). She had full range of motion of the
> extremities (Exhibit 7F at 7). Her cranial nerves were intact (Exhibit
> 8F at 4). Her reflexes were intact (Exhibit 14F at 10). X-ray imaging
> revealed mild disc space narrowing at L4-L5 with mild to moderate
> narrowing at L5-Sl (Exhibit 3F at 15). There were mild degenerative
> changes of the set joints at L5-Sl bilaterally (Exhibit 3F at 15).
> Magnetic resonance imaging revealed mild loss of disc height, mild
> annular disc bulging, minimal facet disease, subtle thecal sac
> effacement, and mild bilateral inferior foraminal encroachment
> (Exhibit 14F at 2). At the lumbosacraljunction, there was narrowing
> of the disc space, mild annular disc bulging with a small focal central
> protrusion, and minor facet disease (Exhibit 14F at 2).

14

(ECF No. 15, PageID #: 99).

Read as a whole, the ALJ properly considered and analyzed the medical evidence under Listing 1.04. Her narrative set forth Listing 1.04's elements and her analysis addressed the crucial elements. And the evidence that she draws out is substantial because a reasonable person might accept it as adequate support for the ALJ's Listing 1.04 finding. *Rogers*, 486 F.3d at 241. Newman has not challenged the ALJ's finding that the record lacks evidence of nerve-root compression (paragraph A), spinal arachnoiditis (paragraph B), or lumbar spinal stenosis resulting in pseudoclaudication (paragraph C). Instead, she argues that the ALJ incorrectly stated "that there was no evidence of motor loss, muscle weakness, sensory loss, or reflex loss … [because she] received bilateral SI joint injections for pain and radiculopathy (Tr. 494, 542-543)." (ECF No. 16, PageID #: 856). While the record reflects those injections, that evidence alone does not demonstrate the existence of the crucial elements discussed above, and Newman does not otherwise attempt to demonstrate any of them. Because Newman "has not demonstrated that her impairments meet the strict requirements for" Listing 1.04, the ALJ's finding should not be disturbed. *Lawson*, 2006 WL 2430991 at *7.

### c.      The ALJ Did Not Err Regarding Listings 12.04 and 12.06

Newman argues that the ALJ erred in her analyses of both Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). 20 C.F.R. Part 404, Subpart P, Appendix 1, Sections 12.04, 12.06 (2021). Specifically, Newman attacks the ALJ's analysis of the "Paragraph B" criteria, which concern a claimant's abilities in four specific areas of mental functioning. (ECF No. 16, PageID #: 857–58). She argues that the ALJ's narrative analysis contains "contradictions," thus rendering them unsupported by substantial evidence. (ECF No. 16, PageID #: 857–58). She also argues that the ALJ failed to discuss what effect (if any)

Newman's three mental-health-related hospitalizations had on the ALJ's Paragraph B finding. (ECF No. 16, PageID #: 857).

In response, the Commissioner argues that substantial evidence supports the ALJ's findings and that the ALJ sufficiently narrated those facts in the decision as a whole. (ECF No. 19, PageID #: 888–91). The Commissioner also argues that Newman has failed to allege that the ALJ's findings lack substantial evidence. (ECF No. 19, PageID #: 890–91).

Listings 12.04 and 12.06 share an analytical framework: The claimant must meet either the Paragraph B or Paragraph C requirements, which are identical for both listings.[6] *See* 20 CFR Part 404, Subpart P, Appendix 1, Section 12.04, 12.06. The ALJ found that Newman did not meet the Paragraph C requirements, a finding that Newman does not directly challenge. Thus, the Court need not address it. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("declin[ing] to formulate arguments on [the petitioner]'s behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the [ALJ]'s decision, and (ii) if so, whether the [ALJ] sufficiently accounted for this evidence.").

To meet the "paragraph B" criteria for either listing, a claimant must have either an "[e]xtreme limitation[7] of one, or marked limitation[8] of two," of the four areas of mental

---

[6] The claimant must also meet the Paragraph A requirements for each listing (which are different). *See* 20 CFR Part 404, Subpart P, Appendix 1, Section 12.04, 12.06. But Newman has not put these findings at issue.

[7] An extreme limitation means that one is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 CFR Part 404, Subpart P, Appendix 1, Section 12.00(F)(2)(e).

[8] A marked limitation means that one's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 CFR Part 404, Subpart P, Appendix 1, Section 12.00(F)(2)(d).

functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 CFR Part 404, Subpart P, Appendix 1, Sections 12.04, 12.06; *see also* 20 CFR Part 404, Subpart P, Appendix 1, Section 12.00(E)(1-4).

The ALJ found that Newman was moderately limited[9] in her ability to understand, remember, and apply information because, while Newman's memory was occasionally described as "variable," it was also frequently described as "normal/intact." (ECF No. 15, PageID #: 97). She found that Newman was moderately limited in her ability to interact with others because, while Newman was occasionally "irritable with agitated behavior and thoughts," she was generally "cooperative … [and] adequately/well groomed … [and] made good eye contact." (ECF No. 15, PageID #: 97). She found that Newman was moderately limited in her ability to concentrate, persist, and maintain pace because, while she was occasionally "noted to have poor attention span and concentration," her attention span and concentration were described as "good to fair/intact." (ECF No. 15, PageID #: 97). And the ALJ found that Newman was mildly limited[10] in her ability to adapt and manage herself because, while she was occasionally "noted to have poor insight and judgment," she generally "had appropriate insight … her judgment was intact … [and she] testified that she retains the capacity to care for her one-year-old daughter." (ECF No. 15, PageID #: 97). Accordingly, the ALJ found that Newman did not meet the Paragraph B criteria. (ECF No. 15,

---

[9] A moderate limitation means that one's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 CFR Part 404, Subpart P, Appendix 1, Section 12.00(F)(2)(c).

[10] A mild limitation means that one's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 CFR Part 404, Subpart P, Appendix 1, Section 12.00(F)(2)(b).

PageID #: 97).

Newman alleges that the ALJ's analyses contain "contradictions" that were "disregarded in favor of" a less-limited finding. (ECF No. 16, PageID #: 857). The "contradictions" that Newman highlights are nothing more than the ALJ's rationale for finding that Newman had more than a "none" or "mild" limitation in these areas of mental functioning: occasional variable memory, irritability, poor attention and concentration. (ECF No. 16, PageID #: 857). It is well settled that an ALJ must weigh conflicting evidence and explain those conflicts in making her decision. (CITE). These "contradictions" demonstrate that the ALJ properly considered the evidence and reached reasonable findings that are supported by substantial evidence, as explained by the ALJ. And Newman again neglects to address the evidence that the ALJ cited that favors the ALJ's finding, which falls short of her burden here. *Greene ex rel. Greene*, 2010 WL 5021033, at *4. At bottom, Newman asks the Court to reweigh the evidence. The Court cannot do so: The ALJ's decision "must be affirmed if … [her] findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision." *Elam*, 348 F.3d at 125.

Separately, Newman alleges that the ALJ failed to discuss her "three" mental-health-related hospitalizations in 2017. [11] (ECF No. 16, PageID #: 857–58). Newman highlights this evidence apparently to demonstrate that she had more than a mild limitation in adapting and managing herself, but she does not explain how those hospitalizations materially undermine the

---

[11] As with Newman's knee surgeries, the Commissioner argues that Newman misstates the number of times that she was hospitalized during August 2017. (*See* ECF No. 16, PageID #: 858; ECF No. 19, PageID #: 890). The precise number of hospitalizations is immaterial because the ALJ reasonably noted that Newman was hospitalized in August 2017 for suicidal ideations and a suicide attempt. (ECF No. 15, PageID #: 98).

ALJ's analysis. (ECF No. 16, PageID #: 858). Although she does not address Newman's hospitalizations here, the ALJ does note later in the decision that Newman was hospitalized in both February and August 2017 with suicidal ideations and a suicide attempt. (ECF No. 15, PageID #: 98, 100). The ALJ thus considered these facts while making her decision.[12] And the mere fact that Newman was hospitalized does not on its own demonstrate that the ALJ's finding lacks substantial evidence. (ECF No. 15, PageID #: 97). At most, Newman's hospitalizations argument again invites the Court to reweigh the evidence and disrupt the ALJ's reasonable finding, which the Court cannot do. *Elam*, 348 F.3d at 125.

Because substantial evidence supports the ALJ's findings, and Newman has failed to demonstrate otherwise, the Court concludes that the ALJ did not err in analyzing Newman's claim under Listing 12.04 or 12.06 or explaining those findings.

*     *     *

The Court concludes that the ALJ did not err in analyzing Newman's claims under Listings 1.02, 1.04, 12.04, and 12.06 or explaining those findings. Thus, the ALJ's listings findings should not be disturbed.

---

[12] Newman squarely argues that the ALJ erred because she "did not address the hospitalizations in her [Paragraph B] analysis," but rather elsewhere in the decision. (ECF No. 20, PageID #: 901). Newman also argues that the ALJ erred because she discussed only Newman's *testimony* concerning the August 2017 hospitalization, rather than discussing the medical record itself. (ECF No. 20, PageID #: 901). Neither argument has merit: "[I]t is well settled that … an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d]' such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006); *accord Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). The ALJ directly mentioned these hospitalizations elsewhere in the decision, which indicates that she properly considered them while analyzing Newman's claims.

### 2.    The ALJ Properly Considered Newman's Obesity

Newman argues that "[t]he ALJ … failed to properly evaluate the combination of Plaintiff's impairments in conjunction with her obesity." (ECF No. 16, PageID #: 858). Newman concedes that "[t]he ALJ briefly mentioned … SSR [02–1p, which guides the obesity analysis,] and stated that she gave consideration to the Ruling and found that Plaintiff's obesity was characterized as Level III, extreme (Tr. 21)." (ECF No. 16, PageID #: 859). But she argues that "[t]here was [otherwise] no analysis of obesity and her knee or back or psychological impairments." (ECF No. 16, PageID #: 859). Newman specifically argues that "[t]he combination of the obesity and Plaintiff's knee and back problems would have limited her to no more than the sedentary level of exertion and would have necessitated a sit/stand option." (ECF No. 16, PageID #: 860).

In response, the Commissioner notes that the ALJ found that Newman's obesity was a severe impairment at Step Two. (ECF No. 19, PageID #: 891 (citing ECF No. 15, PageID #: 96)). The Commissioner argues that substantial evidence supports the ALJ's findings and that Newman's "sit/stand option" argument is merely "an unsupported assertion." (ECF No. 19, PageID #: 891–92).

SSR 02–1p directs the ALJ to assess the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Soc. Sec. Ruling 02–1p, 2002 WL 34686281, *6 (Sept. 12, 2002); *see also Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015). An ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02–1p, 2002 WL 34686281, at *2. "It

must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *Shilo*, 600 F. App'x at 959–60 (quoting SSR 02–1p, 2002 WL 34686281, at *1). "The ALJ is not required to use any 'particular mode of analysis' in assessing the effect of obesity." *Id.* (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006)).

The Court concludes that the ALJ properly considered Newman's obesity in connection with her other impairments in accordance with SSR 02–1p. In her decision, the ALJ stated that she considered Newman's obesity under SSR 02–1p, and she laid out the ruling's analytical framework. (ECF No. 15, PageID #: 99). The ALJ then stated that:

> At points during the relevant period, the claimant's body mass index (BMI) was 42.82 (Exhibit 7F at 7), which is categorized as Level III 'extreme' obesity … When considering the combination of the claimant's obesity and her other impairments, the reduction to less than the light exertional level is appropriate.

(ECF No. 15, PageID #: 99–100). As the Commissioner points out (ECF No. 19, PageID #: 892), the ALJ elsewhere mentioned that, despite experiencing mild to moderate degenerative changes of the knee and lumbar spine, Newman generally walked without assistance and generally had: a normal or intact gait; full strength in the lower extremities; intact reflexes; full ranges of motion; and no knee instability. (ECF No. 15, PageID #: 99). Similarly, the ALJ noted that Newman testified that she could lift up to 25 pounds. (ECF No. 15, PageID #: 101). And the ALJ gave great weight to the opinion of State Agency medical consultant Gail Mutchler, M.D., who specifically noted Newman's obesity and BMI in her RFC finding that Newman could do light work, as modified. (ECF No. 15, PageID #: 101, 184–86). This evidence supports a finding that Newman

can engage in light work,[13] as modified in the RFC, even with Newman's obesity taken into consideration.

As the Commissioner points out, Newman does not argue that the ALJ misstated or mischaracterized this evidence; rather, she argues that the ALJ provided "[n]o analysis" at all, and that the Commissioner—who pointed out various evidence in support of the ALJ's analysis—has engaged in rationalization *post hoc*.[14] (ECF No. 20, PageID #: 901). Newman is incorrect. The Commissioner has not rationalized *post hoc* the ALJ's analysis; instead, the Commissioner affirmatively points to facts that the ALJ discussed in other parts of the RFC narrative that support the ALJ's finding here. (*See, e.g.*, ECF No. 15, PageID #: 99, 101). That is not error. A reviewing court is to "read[] the decision as a whole." *Murchy v. Comm'r of Soc. Sec.*, No. 1:18–CV–2602, 2019 WL 6463392, *1 (N.D. Ohio Dec. 2, 2019) (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016)). Doing so here, the Court concludes that the ALJ did not fail to analyze Newman's obesity, nor did the Commissioner rationalize *post hoc* the ALJ's reasons for finding that "reduc[ing Newman's RFC] to less than the light exertional level is appropriate." (ECF No. 15, PageID #: 100).

Concerning the testimony that the ALJ elicited about a sit/stand option, Newman testified that "there's times [where she] can stand for maybe five, ten minutes and then have to sit down,"

---

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[14] Rationalizations *post hoc*, of course, are not substantial evidence. *See Beinlic v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 169 (6th Cir 2009) (noting that, as a general matter of law, "judicial review of agency action is limited to the reasoning employed by the agency, and should not take into account its position in litigation").

and that when sitting for "five ten, fifteen minutes [she] ha[s] to constantly adjust or even stand up for a minute or two or lay down…" (ECF No. 13, PageID #: 124). The ALJ thus sought Lozer's opinion concerning a sit/stand option. Despite having elicited this testimony, the ALJ did not include a sit/stand option in the RFC. Nor did the ALJ explicitly state why she did not do so.

The Court concludes that the ALJ nevertheless built a logical bridge between the record evidence and the implicit decision to reject the RFC limitation.[15] *Fleischer*, 774 F. Supp. 2d at 877. When analyzing Newman's back pain and RFC limitations, the ALJ noted that Newman had an unassisted gait; 5/5 strength; negative straight-leg-raise for the left leg and only borderline-positive for the right; normal sensation; and full range of motion with all extremities. (ECF No. 15, PageID #: 99). The ALJ cited to Exhibit 7F for each of these key facts. (ECF No. 15, PageID #: 99). Exhibit 7F is a set of medical records that concern specifically Newman's lumbar impairment. (*See* ECF No. 15, PageID #: 572–83). Exhibit 7F also indicates that Newman received sacroiliac joint injections to address her back pain. (*E.g.*, ECF No. 15, PageID #: 572). Those injections relieved "greater than 70%" Newman's pain and allowed her to increase her activity level and "sit for long[er] periods" of time. (ECF No. 15, PageID #: 572). The ALJ's citations to Exhibit 7F demonstrate to the Court that the ALJ properly considered this evidence. And by highlighting the facts discussed above, the ALJ supported her decision to not include a sit/stand option with substantial evidence, as a reasonable person might accept it as sufficient support for that finding. *Rogers*, 486 F.3d at 241.

---

[15] "[I]t is well settled that …an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky*, 167 F. App'x at 507–08.

It is well settled that an ALJ "is required to incorporate [in the RFC] only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). And before a district court, "the party seeking remand bears the burden of showing that a remand is proper…" *Oliver*, 804 F.2d at 966. Newman does not point to any particular evidence that might compel a sit/stand option. (*See* ECF No. 16, PageID #: 860 (stating only that "[t]he combination of the obesity and Plaintiff's knee and back problems would have limited her to no more than the sedentary level of exertion and would have necessitated a sit/stand option")). Newman has thus failed to demonstrate that the evidence as a whole compels a sit/stand option. Accordingly, the ALJ's decision to omit a sit/stand option should not be disturbed.

### 3.  Newman Fails to Demonstrate that the ALJ Erred Regarding Her Headaches

In a single, short paragraph, Newman alleges that the ALJ "failed to acknowledge or mention" that Newman's headaches, which once were diagnosed as acute non-intractable tension-type headaches, were later diagnosed as migraines without aura. (ECF No. 16, PageID #: 860). In response, the Commissioner argues that Newman's argument must fail because "she never identified [headaches] as an impairment that limited her ability to work (Tr. 45-54, 66-67, 241, 252, 262)." (ECF No. 19, PageID #: 892).

The Court agrees with the Commissioner. At the administrative level, the claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). And again, before a district court, "the party seeking remand bears the burden of showing that a remand is proper…" *Oliver*, 804 F.2d at 966. With regard to her headaches, Newman has failed to do either. She did not list her headaches as a disabling impairment when she initiated her claims, nor did she or her attorney draw the ALJ's attention to these headaches (or the changed diagnosis) during the administrative hearing. (ECF No. 15,

PageID #: 129–36). Nor did she seek the vocational expert's testimony concerning a hypothetical individual with functional limitations caused by these headaches. (ECF No. 15, PageID #: 143–44). And here, Newman's brief fails to demonstrate how a change in headache diagnosis compels remand. It is well settled that "a diagnosis alone is not enough to establish specific functional limitations as a matter of right." *Teresa F. v. Saul*, No. 1:18-cv-01967-JRS-MPB, 2019 WL 2949910, *5, n. 7 (S.D. Ind. July 9, 2019); *see also* Soc. Sec. Ruling 16–3p, 2016 WL 1119029, at *2 (2016) ("Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."). Because Newman failed to demonstrate to the ALJ, and fails to demonstrate to this Court, that the change in her headaches functionally limit her, the Court concludes that this argument lacks merit.

### 4. The ALJ Did Not Err Regarding the State Agency Medical or Psychological Consultants' Opinions

Newman argues that the ALJ should not have accorded great weight to the State Agency's medical consultants' opinions. (ECF No. 16, PageID #: 861). She also argues that the ALJ cherry picked the evidence in according only some weight to the State Agency's psychological consultants' opinions. (ECF No. 16, PageID #: 861–62).

#### a. The ALJ Properly Considered and Weighed the State Agency Medical Consultants' Opinions

Newman argues that the State Agency medical consultants' opinions were outdated, as they were authored "in August 2017, prior to the lumbar MRI and deterioration of her knee." (ECF No. 16, PageID #: 861). Thus, Newman argues that "[i]t is unclear whether these reviewers," had they "had the opportunity to review the entire file," would have instead "limited Plaintiff to the sedentary level of exertion," rather than the light level that they opined. (ECF No. 16, PageID #: 861). For that reason, Newman argues that "these opinions should not have been accorded great

weight." (ECF No. 16, PageID #: 861).

The Commissioner responds that the subsequent lumbar MRI "showed only 'mild discovertebral degenerative changes' (Tr. 637), which is consistent with the lumbar x-rays (Tr. 427) that were" considered by the State Agency medical consultants. (ECF No. 19, PageID #: 893). The Commissioner also argues that "mild to moderate findings" on an MRI "do[] not undermine the ALJ's finding that Plaintiff's impairments did not prevent her from performing light work with additional limitations." (ECF No. 19, PageID #: 893 (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 639 (6th Cir. 2016))). And concerning Newman's knee impairment, the Commissioner argues that the ALJ properly considered "and accounted for it by limiting Plaintiff to work with no 'operat[ing] foot controls with the right lower extremity' (Tr. 23)." (ECF No. 19, PageID #: 893). Finally, the Commissioner argues that Newman "does not show that her right knee impairment required a more limited RFC." (ECF No. 19, PageID #: 893).

"[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *White v. Comm'r of Soc. Sec.*, 970 F.Supp.2d 733, 752 (N.D. Ohio 2013) (citation omitted). That is because State Agency consultants are deemed to be "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; SSR 96–6p at *2– 3. An ALJ must treat the State Agency medical consultants' findings as medical opinions under 20 C.F.R. §§ 404.1527, 416.927.[16] *See* 20 C.F.R. §§ 404.1513a(b), 416.913a(b). Under those regulations, the ALJ must consider the opinion under each of the following factors: (1) whether there is an examining relationship; (2) whether there is a treating relationship, including the length

---

[16] This is so only for claims, like Newman's, that were filed before March 27, 2017. Claims filed on or after that date are to be reviewed under 20 C.F.R. §§ 404.1520(c), 416.920(c).

and nature of it; (3) how supported the opinion is; (4) how consistent the opinion is to other evidence in the record; (5) whether the author has a particular specialization; and (6) other factors, such as "the amount of understanding of our disability programs and their evidentiary requirements that a medical source." 20 C.F.R. §§ 404.1527(c), 416.927(c). Nevertheless, "[a]dministrative law judges are not required to adopt any prior administrative medical findings." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor…" *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020).

The Court concludes that the ALJ properly considered the State Agency medical consultants' opinions under the proper regulation. The ALJ stated that

> [t]he state agency medical consultants supported their findings with citations to the medical evidence and [provided] an explanation. Further, the prior administrative medical findings are consistent with the objective evidence of record. For example, the claimant testified that she is able to lift 25 pounds (Hearing Testimony). Her gait was unassisted and normal (Exhibit 3F at 10, 13). She had 5/5 strength in the lower extremities (Exhibit 3F at 10, 13). Based on this evidence, the undersigned finds that the claimant retains the capacity for work at the light exertional level. Straight leg raising was borderline positive on the right and negative on the left (Exhibit 3F at 10). She had full range of motion of the extremities (Exhibit 7F at 7). She had painful extension in the lumbar spine (Exhibit 7F at 4). Based on this evidence, the undersigned finds that the claimant can occasionally climb ramps and stairs, never climb ladders[,] ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch, but never crawl. The undersigned has considered the claimant's prospective knee surgery; while these records have not been submitted, out of an abundance of caution, the undersigned finds that the claimant should not operate foot controls with the right lower extremity…

(ECF No. 15, PageID #: 101). The ALJ thus discussed the opinion's consistency to the other evidence of record, its internal supportability, finding that it was consistent and well supported. The Court agrees.

Newman's argument concerning the outdated nature of these opinions concerning

27

Newman's lumbar impairment is not well-taken. As the Commissioner points out, the spinal MRI that the State Agency medical consultants reviewed detailed "mild disc space narrowing at L4-L5 with mild to moderate narrowing at L4-S1 [and] mild degenerative changes of the set joints at L5-S1 bilaterally." (ECF No. 15, PageID #: 505). The more recent spinal MRI noted "mild discovertebral degenerative changes involving L4-L5." (ECF No. 15, PageID #: 715). Thus, they are materially the same; the ALJ implied as much, noting that "the prior administrative medical findings are consistent with the objective evidence of record." (ECF No. 15, PageID #: 101). And Newman herself does not argue that the records themselves are materially different—only that "[i]t is unclear whether these reviewers" would have changed their minds. Newman bears the burden of demonstrating that the ALJ's finding lacks substantial evidence. *Greene ex rel. Greene*, 2010 WL 5021033, at *4. She has not done so.

Concerning Newman's knee degeneration, the Commissioner correctly points out that Newman does not advocate for any particular additional limitation; instead, she merely questions the reliability of the State Agency medical consultants' opinions as outdated. (ECF No. 16, PageID #: 861). But the ALJ noted that Newman was to have additional surgery on her right knee after the hearing and, "out of an abundance of caution, … f[ound] that the claimant should not operate foot controls with the right lower extremity." (ECF No. 15, PageID #: 101). The ALJ squarely acknowledged that Newman's right knee impairment had progressed beyond the state that it was in when the State Agency medical consultants opined on it. And, reasonably, the ALJ found that Newman should not operate any foot controls with her right leg. Newman fails to show that the ALJ's finding lacks substantial evidence. As such, her argument lacks merit. *Greene ex rel. Greene*, 2010 WL 5021033, at *4.

In any case, an RFC determination is a legal finding, not a medical determination; thus, an

28

"ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B)); *see also Nejat*, 359 F. App'x at 578 ("Although physicians opine on a claimant's residual functional capacity to work, [the] ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge … is responsible for assessing your residual functional capacity."). The ALJ built a logical bridge between the evidence of record and her findings. Accordingly, the Court concludes that the ALJ properly considered the State Agency medical consultants' opinions, and that the ALJ's analysis of these opinions was supported by substantial evidence.

> **b.    The ALJ Did Not Impermissibly Parse the Record when Considering the State Agency Psychological Consultants' Opinions**

Concerning the State Agency psychological consultants' opinions, Newman first summarizes the State Agency psychological consultants' specific opinions about her mental functioning, then argues that the ALJ, despite directly acknowledging certain "evidence which would have supported a more restrictive RFC," nevertheless "cherry pick[ed] the evidence" to support a less-limited RFC. (ECF No. 16, PageID #: 862). Although she does not support it directly, Newman alludes to an established proposition: If the ALJ cherry picks the evidence, then it is "not supported by substantial evidence." (ECF No. 16, PageID #: 862).

In response, the Commissioner argues that the ALJ "appropriately evaluated the opinions of Drs. Katz and Bergsten." (ECF No. 19, PageID #: 893). The Commissioner then notes that Newman "cit[es] no evidence or any portion of the ALJ's decision" that was cherry picked. (ECF No. 19, PageID #: 893). And finally, the Commissioner states that "in any event, 'an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" (ECF No. 19, PageID #:

29

893 (quoting *Daniels v. Comm'r of Soc. Sec.*, 152 F. App' x 485, 489 (6th Cir. 2005))).

The Court agrees with the Commissioner. ALJs must "consider all evidence available in

[an] individual's case record." 42 U.S.C. § 423(d)(5)(B). In carrying out that duty,

> an ALJ may not selectively include only those portions of the
> medical evidence that places a claimant in a capable light, and fail
> to acknowledge evidence that potentially supports a finding of
> disability. Courts have not hesitated to remand under such
> circumstances. *See*, *e.g.*, *Gentry* [*v. Comm'r of Soc. Sec.*, 741 F.3d
> 708, 724 (6th Cir. 2014)] (reversing where the ALJ "cherry-picked
> select portions of the record" rather than doing a proper analysis);
> *Germany–Johnson* [*v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777
> (6th Cir. 2008)] (finding error where the ALJ was "selective in
> parsing the various medical reports") *see also Williams v. Colvin*,
> 2017 WL 1319781 at * 16 (N.D Ohio Feb. 1, 2017), *report and
> recommendation adopted by*, 2017 WL 1304475 (N.D. Ohio April
> 7, 2017); *Ackles v. Colvin*, 2015 WL 1757474 at * 6 (S.D. Ohio
> April 17, 2015), *report and recommendation adopted by*, 2015 WL
> 2142396 (S.D. Ohio May 6, 2015) ("The ALJ did not mention this
> objective evidence and erred by selectively including only the
> portions of the medical evidence that placed Plaintiff in a capable
> light.") … *Taylor v. Comm'r of Soc. Sec.*, 2014 WL 1874055 at * 4
> (N.D. Ohio May 8, 2014) (stating it "is clear that an ALJ may not
> determine the RFC by failing to address portions of the relevant
> medical record, or by selectively parsing that record—i.e., 'cherry-
> picking' it—to avoid analyzing all the relevant evidence. This is
> particularly so when the evidence ignored is from a treating
> physician.["]).

*Davidson v. Berryhill*, No. 16-cv-2621, 2017 WL 4682343, at 17 (N.D. Ohio Oct. 18, 2017). At

the same time, the Sixth Circuit has noted that cherry-picking arguments can "cut[] both ways," as

they may turn on whether the ALJ's decision falls within his "zone of choice." *White*, 572 F.3d at

285. Indeed, what plaintiff-appellants have called cherry-picking "can [at times] be described more

neutrally as weighing the evidence," and the claimant bears the burden of persuading the court

"that the ALJ erred in conducting this difficult task." *Id.* at 284.

The ALJ did not impermissibly parse—or cherry pick—the evidence to suit a particular

outcome. As Newman herself points out, the ALJ in her narrative analysis discussed facts that

could have favored according greater or lesser weight to these opinions. (*E.g.* ECF No. 15, PageID #: 101). Similarly, the ALJ discussed evidence that could have favored greater or lesser restrictions to the RFC. (ECF No. 15, PageID #: 101). In so doing, the ALJ merely weighed the evidence and reached a reasonable conclusion that is supported by substantial evidence. *White*, 572 F.3d at 285. Although Newman would have the Court reweigh the evidence, the Court cannot do so. *Elam*, 348 F.3d at 125. Accordingly, the Court concludes that the ALJ did not impermissibly parse the record in according only some weight to the State Agency psychological consultants' opinions.

### D.    The ALJ Properly Considered Newman's Subjective Statements of Physical Pain and Mental-Health Symptoms

In her second issue, Newman argues that "the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Plaintiff's testimony was credible."[17] (ECF No. 16, PageID #: 864). She argues that the ALJ was incorrect when she found that Newman's "statements regarding her pain were somewhat inconsistent with the objective medical evidence…" (ECF No. 16, PageID #: 864). She again alleges that the ALJ did not properly credit her lumbar and knee impairments and their effect on her ability "to stand for the requisite six hours per day necessary to perform work at the light level of exertion." (ECF No. 16, PageID #: 865). She also attacks the ALJ's finding concerning "her testimony that she was unable to work due to her depression and anxiety," which she again argues the ALJ "disregarded…" (ECF No. 16, PageID #: 865). And Newman argues that "[t]here was an insufficient analysis … [to] comply with the requirements of SSR 16-3p." (ECF No. 16, PageID #: 865).

---

[17] Although Newman uses the term *credibility*, SSR 16–3p expressly "eliminate[ed] the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as [the] regulations do not use this term." SSR 16–3p at *2. Nevertheless, the Court construes her argument to be that the ALJ improperly "evaluate[d] the intensity and persistence of [her] symptoms" under SSR 16–3p.

In response, the Commissioner argues that the ALJ, "[i]n declining to accept Plaintiff's allegations of disabling symptoms, … correctly considered the objective medical evidence" and rendered a reasonable finding on Newman's subjective complaints. (ECF No. 19, PageID #: 894 (citing *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995))). The Commissioner again cites to the evidence discussed above showing that Newman's knee and lumbar impairments were relatively mild and not additionally limiting. (ECF No. 19, PageID #: 894). The Commissioner argues that the mere fact that Newman conservatively managed her spinal impairment with lumbar injections does not compel a different finding. (ECF No. 19, PageID #: 895 (citing *Trollinger v. Berryhill*, No. 1:17-cv-01358, 2018 WL 2163824, *20 (N.D. Ohio Apr. 25, 2018), *report & recommendation adopted*, 2018 WL 2149274 (N.D. Ohio May 10, 2018))). And the Commissioner argues that the ALJ sufficiently considered and discussed—rather than "disregarded"—Newman's subjective statements of mental impairments. (ECF No. 19, PageID #: 895–96).

A claimant's statements as to "pain or other symptoms will not alone establish that [she is] disabled…" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 55, 531 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling symptoms when the symptoms form a basis of the claimant's disability claim. *Rogers*, 486 F.3d at 247; *see also* Soc. Sec. Ruling 16–3p, 2017 WL 5180304, at *3–4 (Oct. 25, 2017).[18] First, the ALJ must determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16–3p, 2017 WL 5180304, at *3. If the first part of the test is satisfied, the ALJ must then "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to

---

[18] Social Security Ruling 16–3p superseded SSR 96–7p, and is to be used by ALJs when making determinations and decisions on or after March 28, 2016. SSR 16–3p, 2017 WL 5180304, at *1.

which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. If a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, then the ALJ must examine the entire case record. *Id.* SSR 16–3p lists the factors relevant to the ALJ's determination at this step: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain; and (7) "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16–3p, 2017 WL 5180304, at *7–8; *see, e.g.*, *Morrison v. Comm'r of Soc. Sec.*, No. 16–CV–1360, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017). An ALJ is not required to expressly address all of these factors, but the ALJ should sufficiently articulate the assessment of the evidence to assure the court that the ALJ considered all of the relevant evidence. *Collins v. Comm'r of Soc. Sec.*, No. 5:18–CV–2082, 2019 WL 3797931, *5 (N.D. Ohio July 30, 2019), *report and recommendation adopted*, *Collins v. Berryhill*, 2019 WL 3804149 (N.D. Ohio Aug. 13, 2019).

Looking first to Newman's subjective statements about her physical pain, the ALJ found at Step Two that Newman has multiple medically determinable impairments that could reasonably be expected to produce her alleged symptoms. (ECF No. 15, PageID #: 96). The ALJ then found that Newman's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (ECF No. 13, PageID #: 90). To support this finding, the ALJ stated:

> In evaluating the claimant's back pain, the undersigned notes that
> her gait was unassisted and normal (Exhibit 3F at 10, 13). She had

5/5 strength in the lower extremities (Exhibit 3F at 10, 13). Straight leg raising was borderline positive on the right and negative on the left (Exhibit 7F at 10). Her sensation to light touch was normal (Exhibit 7F at 4, 10). She had painful extension in the lumbar spine (Exhibit 7F at 4). She had full range of motion of the extremities (Exhibit 7F at 7). Her cranial nerves were intact (Exhibit 8F at 4). Her reflexes were intact (Exhibit 14F at 10). X-ray imaging revealed mild disc space narrowing at L4-L5 with mild to moderate narrowing at L5-S1 (Exhibit 3F at 15). There were mild degenerative changes of the set joints at L5-S1 bilaterally (Exhibit 3F at 15). Magnetic resonance imaging revealed mild loss of disc height, mild annular disc bulging, minimal facet disease, subtle thecal sac effacement, and mild bilateral inferior foraminal encroachment (Exhibit 14F at 2). At the lumbosacral junction, there was narrowing of the disc space, mild annular disc bulging with a small focal central protrusion, and minor facet disease (Exhibit 14F at 2).

Turning to the claimant's knee pain, the undersigned notes that she had no joint swelling, erythema, or effusion (Exhibit 3F at 10). She had 5/5 strength in her extremities (Exhibit 3F at 10, 13; Exhibit 7F at 4, 7). Her gait was unassisted and normal (Exhibit 3F at 10, 13). She had full range of motion of the extremities (Exhibit 7F at 7, 10; Exhibit 14F at 3). On occasion, she was noted to have an antalgic gait (Exhibit 14F at 6). However, she had full range of motion of the knee (Exhibit 14F at 6). There was no instability (Exhibit 14F at 6). Imaging revealed degenerative changes in the medial compartment (Exhibit 14F at 7).

Additionally, despite alleging disabling pain, the claimant was routinely described by medical providers as in no apparent/no acute distress (*E.g.*, Exhibit 14F at 6).[19]

(ECF No. 15, PageID #: 99).

The Court concludes that the ALJ properly evaluated Newman's subjective statements

---

[19] Newman argues that this final, one-sentence paragraph is the ALJ's rationale concerning her subjective statements of mental limitations. (ECF No. 16, PageID #: 864–65). As the Commissioner notes, the record that the ALJ cited is from a *physical* check-up, not a mental-health assessment. (*See* ECF No. 15, PageID #: 705). Additionally, the ALJ included this paragraph in a section otherwise concerning subjective statements of physical pain. And the ALJ directly discussed Newman's mental-health-related subjective statements in detail only two paragraphs later. Thus, the Court agrees with the Commissioner that this statement concerns specifically Newman's distress relating to her physical symptoms.

about the intensity and persistence of the symptoms stemming from her medically determinable physical impairments. The ALJ discussed the evidence that supported her statements as well as the evidence that cut against it. By doing so, the ALJ created a logical bridge between the objective medical evidence and the finding that Newman's subjective statements of physical pain were only somewhat consistent with the objective medical evidence. Thus, the Court concludes that the ALJ properly considered Newman's statements about the intensity and persistence of her pain. Accordingly, this finding should not be disturbed.

Looking next to Newman's subjective statements of her mental impairments, the ALJ stated that she had

> considered the claimant's psychological symptoms and their effect on functioning together, instead of separately, regardless of the diagnostic label attached. The undersigned notes that the claimant attempted suicide and required inpatient treatment in February of 2017 (Exhibit 3F at 4).
>
> Examinations reflect that her affect was appropriate (Exhibit 3F at 6, 10; Exhibit 4F at 9, 12). Her speech and thought processes were well organized (Exhibit 3F at 6, 10; Exhibit 10F at 5; Exhibit 14F at 23). She had appropriate insight (Exhibit 3F at 6; Exhibit 10F at 5; Exhibit 14F at 32). Her judgment was intact (Exhibit 3F at 6; Exhibit 10F at 5; Exhibit 14F at 32). However, on occasion, she was noted to have fair to poor insight and judgment (Exhibit 5F at 12). Her memory was normal/intact (Exhibit 4F at 9, 12; Exhibit 7F at 4, 7; Exhibit 11F at 4). On occasion, her memory was described as variable (Exhibit 13F at 9). Her thoughts were goal directed and logical (Exhibit 5F at 12). She was alert and oriented (Exhibit 5F at 12; Exhibit 7F at 7). She was adequately/well groomed (Exhibit 5F at 12; Exhibit 10F at 5). She made good eye contact (Exhibit 10F at 5; Exhibit 14F at 32). Her associations were relevant (Exhibit 12F at 9; Exhibit 13F at 6). Her attention span and concentration were good to fair/intact (Exhibit 12F at 9; Exhibit 13F at 6, 9; Exhibit 15F at 10; Exhibit 16F at 14). On occasion, she was noted to have poor attention span and concentration (Exhibit 13F at 4). She was cooperative (Exhibit 12F at 23, 31, 33; Exhibit 15F at 10; Exhibit 15F at 33). On occasion, she was described as irritable with agitated behavior and thoughts (Exhibit 15F at 16).

(ECF No. 15, PageID #: 102).

Newman alleges that "the ALJ failed to even mention the evidence which supported Plaintiff's credibility about her symptoms," but she does not directly state what that evidence is. (*See* ECF No. 16, PageID #: 865). The Court construes Newman's prior paragraph, though, to be context for that otherwise unsupported statement:

> Mentally, the ALJ disregarded her testimony that she was unable to work due to her depression and anxiety (Tr. 46). Plaintiff stated to her Attorney that she had difficulties with her concentration, needed to write down instructions so she would not forget, stayed away from others, did not handle stress well, cried, had panic attacks, and had irritability and loss of interest daily (Tr. 280-281).

(ECF No. 16, PageID #: 865). Newman is correct that the ALJ did not directly cite Exhibit 9E (the statements to Newman's attorney); however, "it is well settled that … an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d]' such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006). The ALJ's analysis shows that she properly considered the record evidence. Indeed, the ALJ addressed the evidence concerning each of the points that Newman draws out, albeit at other places in the record. Newman fails to demonstrate that the ALJ's analysis lacks substantial evidence, and it is her burden to do so. *Greene ex rel. Greene*, 2010 WL 5021033, at *4. Accordingly, the Court concludes that the ALJ properly considered Newman's subjective statements about her mental symptoms.

When read as a whole, the evidence that the ALJ highlighted is substantial evidence, as a reasonable person might accept it as adequate support for the ALJ's conclusion concerning the consistency of Newman's subjective statements. *Rogers*, 486 F.3d at 241. Accordingly, the ALJ's finding should not be disturbed. *Elam*, 348 F.3d at 125.

36

### E.  The ALJ's Step Five Finding Is Supported by Substantial Evidence

Newman argues that the ALJ's Step Five Finding lacks substantial evidence. (ECF No. 16, PageID #: 866–67). The Commissioner argues, though, that Newman really asks the Court to find that the ALJ should have included in the RFC a "sit/stand option." (ECF No. 19, PageID #: 896–97). The Commissioner argues that Newman's issue thus raises the wrong question. (ECF No. 19, PageID #: 896).

The Commissioner is correct. At step five the Commissioner has the burden of proof to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the impairments *already proven* [before Step Four], whether there are jobs in the economy which a claimant can perform." *Id*. (emphasis added). If a Claimant has not established limitations to be included in an RFC by step four, the burden does not shift to the Commissioner to prove an RFC—or its limitations—at step five.  *Id*. at 392. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987). It is well settled that an ALJ "is required to incorporate [in the RFC] only those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235.

As discussed above, Newman has not demonstrated that the ALJ erred in fashioning the RFC; including by not adopting a "sit/stand option." Thus, Newman's only viable argument at Step Five is whether the ALJ's finding is supported by substantial evidence.

The Court concludes that Lozer's vocational expert testimony is substantial evidence. "A vocational expert's testimony concerning the availability of suitable work may constitute

substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). The ALJ asked Lozer to first opine on a hypothetical individual of Newman's age, education, and relevant vocational background

> who can do light work except she can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds[,] and can occasionally balance, stoop, kneel, [and] crouch but never crawl. She is to use no foot controls with the right lower extremity. She can never work around hazards[,] such as unprotected heights or moving dangerous mechanical parts. She can occasionally work in conditions of humidity and wetness and in conditions of extreme cold. She is also limited to performing simple, routine[,] and repetitive tasks but not at production rate pace. For example[:] no assembly line work. She is limited to no tandem work. She is limited to making simple work-related decisions. She is limited to responding appropriately to occasional interaction with supervisors[ and] coworkers[,] and is to have no contact with the general public. She is limited to tolerating few changes in the work setting[,] defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently and be adequately and easily explained.

(ECF No. 15, PageID #: 137–38). Lozer testified that there was work in sufficient numbers in the national economy for a hypothetical individual with those limitations. (ECF No. 15, PageID #: 138). He testified that there were three representative occupations—custodian, office clerk, and laborers—that the hypothetical individual could perform, and he testified that his testimony was consistent with the DOT and, where not contemplated by the DOT, his education and experience. (ECF No. 15, PageID #: 1). The ALJ's first hypothetical was materially identical to the RFC finding that the ALJ issued:

> [Newman] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,] except she can occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch, but never crawl. She is to use no foot controls with the right lower extremity. She can never work around hazards, such as unprotected

38

heights or moving dangerous mechanical parts. She can occasionally work in conditions of humidity and wetness, and in conditions of extreme cold. She is also limited to performing simple, routine[,] and repetitive tasks, but not at a production rate pace, for example, no assembly line work. She is limited to no tandem work. She is limited to making simple work-related decisions. She is limited to responding appropriately to occasional interaction with supervisors, coworkers, and is to have no contact with the general public. She is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained.

(ECF No. 12, PageID #: 86). Lozer's testimony was thus in response to a hypothetical that accurately set forth Newman's physical and mental impairments. Because the ALJ relied on that testimony in his Step Five finding, the Court concludes that the ALJ's finding was not in error. *Smith*, 307 F.3d at 378.

## VI.    Recommendation

Because the ALJ followed proper procedures and her findings are supported by substantial evidence, I recommend that the Commissioner's final decision be AFFIRMED.

DATED: August 4, 2021

*CarmenHenderson*

Carmen E. Henderson
United States Magistrate Judge

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).